# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2019AP1479

†Petition for Review filed

Complete Title of Case:

STATE OF WISCONSIN EX REL. CITY OF WAUKESHA,

PETITIONER-RESPONDENT,

V.

CITY OF WAUKESHA BOARD OF REVIEW,

RESPONDENT-APPELLANT,

SALEM UNITED METHODIST CHURCH,

INTERESTED PARTY-RESPONDENT.

| | |
|---|---|
| Opinion Filed: | November 18, 2020 |
| Submitted on Briefs: | June 11, 2020 |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Gundrum and Davis, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of *Eric J. Larson* of *Municipal Law & Litigation Group, SC*, Waukesha. |
| Respondent ATTORNEYS: | On behalf of the petitioner-respondent, the cause was submitted on the brief of *Brian E. Running*, *City Attorney*, Waukesha. |

**2020 WI App 77**

COURT OF APPEALS
DECISION
DATED AND FILED

November 18, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP1479**

Cir. Ct. No.  2018CV1432

STATE OF WISCONSIN

IN COURT OF APPEALS

---

STATE OF WISCONSIN EX REL. CITY OF WAUKESHA,

PETITIONER-RESPONDENT,

V.

CITY OF WAUKESHA BOARD OF REVIEW,

RESPONDENT-APPELLANT,

SALEM UNITED METHODIST CHURCH,

INTERESTED PARTY-RESPONDENT.

---

APPEAL from an order of the circuit court for Waukesha County: MICHAEL O. BOHREN, Judge. *Reversed and cause remanded with directions*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

¶1    NEUBAUER, C.J.   The issue is whether the City of Waukesha (City) may appeal from a tax assessment determination by the City of Waukesha Board of Review (Board), which rejected the City assessor's evaluation, by commencing a certiorari action under WIS. STAT. § 70.47(13) (2017-18).[1]

¶2    After the taxpayer, Salem United Methodist Church (Church) received a favorable decision from the Board, the City sought statutory certiorari review; the circuit court issued the writ; and the Board moved to quash the writ and dismiss the case on the grounds that the City lacked authority to seek certiorari review and, in any event, that the Board satisfied the certiorari standards. The court denied the motion, reasoning that the City had authority to seek review under WIS. STAT. § 70.47(13), and the Board's decision failed to satisfy any of the certiorari standards. We conclude that § 70.47(13) does not authorize the City to commence a certiorari action.[2]  Because the statute did not empower the City to appeal from the Board's determination, we reverse and remand with directions to the circuit court to quash the writ and dismiss the action.

---

[1]  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]  Because of our conclusion that the circuit court erred in denying the motion to quash the writ due to the City's lack of authority to appeal, we do not reach the issue of whether the Board satisfied the certiorari criteria on the merits, nor do we address the Board's standing argument. *See Lake Delavan Prop. Co. v. City of Delavan*, 2014 WI App 35, ¶14, 353 Wis. 2d 173, 844 N.W.2d 632 (when one appellate issue is dispositive, we need not address other issues).

## BACKGROUND

*The Church's Objection to the Increased Tax Assessment*

¶3      In proceedings before the Board, the parties differed as to the valuation of the subject property. Because we determine that the City is not statutorily authorized to appeal the Board's decision, we need not address in detail the merits of the valuation dispute. In 2017, the City assessed the property owned by the Church at $51,900. In 2018, the assessor increased the amount to $642,200, in part due to the Church apparently having received, and later admitting that it accepted, an offer to sell for approximately $1,000,000. The assessor notified the Church of the change, informed it that the open book session would be held the following week, and explained that a Board hearing would be conducted. In response, the Church filed an objection, providing its own amount of $108,655 and the basis therefor. After a hearing at which the assessor testified and provided his analysis, and the Church provided testimony and evidence, the Board ruled in favor of the Church, accepting its valuation, slightly rounding up to $108,700.

*The City's Certiorari Appeal Seeking to Overturn the Board's Decision*

¶4      The City subsequently petitioned the circuit court under WIS. STAT. § 70.47(13) to issue a writ of certiorari, asserting the Board failed to afford the assessor's amount the required presumption of correctness, the Church failed to overcome the presumption with sufficient evidence, and the Board's decision was arbitrary and unreasonable. The court issued the writ, ordering the writ's return within thirty days, along with the record of the Board's proceedings, documents, and files.

¶5    The Board moved to quash the writ on grounds, among others, for failure to state a claim for relief that could be granted and for lack of standing, capacity, legal authority to commence such an action, and jurisdiction. It also moved to dismiss on the ground that the Church provided sufficient credible evidence to overcome the presumed correctness of the assessor's valuation, such that the Board acted according to law and not in an arbitrary manner.

¶6    The circuit court denied both motions. It remanded the matter to the Board for further proceedings in conformity with the court's order. The Board appeals.[3]

## DISCUSSION

### *Standards of Review and Rules of Statutory Interpretation*

¶7    The Board argues that WIS. STAT. § 70.47(13) does not authorize or empower the City to take a certiorari appeal of the Board's determination to the circuit court. To resolve the question, we must undertake statutory interpretation, which is a question of law we review de novo. *See **Hartford Citizens for Responsible Gov't v. City of Hartford Bd. of Zoning Appeals***, 2008 WI App 107, ¶12, 313 Wis. 2d 431, 756 N.W.2d 454.

¶8    When interpreting WIS. STAT. § 70.47(13), the goal is to give effect to the intent of the legislature, which we assume is expressed in the text of the statute. ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. To this end, we give the language of the statute its common, ordinary, and accepted meaning. ***Id.***, ¶45. We interpret statutory

---

[3] The Church did not file its own brief, pointing out that its interests were well-represented by the Board, that the Church supports the Board's arguments, and it seeks the same relief.

language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes," and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶48. If, employing these principles, the meaning of the statute is plain, then we apply that language to the facts at hand. *See id.*, ¶¶45-50.

¶9     A statute is ambiguous when "it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶47. However, a statute is not rendered ambiguous merely because two parties disagree as to its meaning. *Id.*

*The Language of WIS. STAT. § 70.47(13)*

¶10     We must decide whether WIS. STAT. § 70.47(13) authorized the City to appeal the assessment ruling of the Board. We begin therefore with the statute itself, but then also summarize the related statutory scheme regarding objections and appeals of tax assessments. Section 70.47(13) provides in relevant part as follows:[4]

> **(13) CERTIORARI.** Except as provided in [WIS. STAT. §] 70.85, appeal from the determination of the board of review shall be by an action for certiorari commenced within 90 days after the taxpayer receives the notice under sub. (12).

¶11     Because the above provision is based on and refers to a number of preceding circumstances, as well as other statutory provisions, we will first provide

---

[4] WISCONSIN STAT. § 70.47(13) was amended by 2017 Wis. Act 358. The parties do not argue that the changes in any way affect our analysis in this case and we do not note any changes that would matter to our analysis.

some background and context of the tax assessment and objection process and then analyze the applicable statutes.

*Wisconsin's Overall Real Property Tax Assessment Process and Appeals to the Board of Review*

¶12      In general, Wisconsin taxes property using a means of assessment laid out in WIS. STAT. ch. 70. *See **Metropolitan Assocs. v. City of Milwaukee***, 2011 WI 20, ¶6, 332 Wis. 2d 85, 796 N.W.2d 717. Municipalities, such as the City here, comprise the primary units for administering property taxes. *See **Nankin v. Village of Shorewood***, 2001 WI 92, ¶16, 245 Wis. 2d 86, 630 N.W.2d 141. For this purpose, each municipality is designated as a "taxation district," *see* WIS. STAT. § 70.045, which must have a tax assessor, who can be appointed or elected,[5] *see* WIS. STAT. § 70.05(1); *Nankin*, 245 Wis. 2d 86, ¶16.

¶13      Here, the City's mayor appoints the assessor, whose term is indefinite and whose appointment is subject to confirmation by the common council. *See* CITY OF WAUKESHA, WIS., CODE ch. 2.01(2) (Sept. 21, 2015).

¶14      The assessor values all taxable property within the taxation district. *See* WIS. STAT. §§ 70.05, 70.10, 70.29, 70.32(1)-(2). The assessor must notify in writing an owner of a changed assessment at least fifteen days before the board meeting, including the assessment amount, the time and place of the meeting, and information about how to object. WIS. STAT. § 70.365. Once the assessor has completed the assessment rolls, the municipal clerk publishes a notice to the public of the open book session, at which time the rolls are made available for examination. WIS. STAT. § 70.45. This session also offers a taxpayer an opportunity to speak with

---

[5] WISCONSIN STAT. § 70.045 defines "taxation district," in relevant part, as "a town, village or city in which general property taxes are levied and collected."

the assessor about an adjustment or correction (the assessor must be present for at least two hours while the rolls are open). *Id.* The assessor is permitted to make changes that are necessary, and materials are provided as to how to appeal an assessment. *Id.*

¶15 Owners who then wish to dispute the assessment may file an objection with the board of review. *See* WIS. STAT. §§ 70.07, 70.075, 70.47(7)(a). If, among other things, an intent to object is properly filed at least two days before the first scheduled board meeting and the taxpayer provides its own written estimate of the land value, specifying the information used to calculate that estimate, the board will consider the objection. Sec. 70.47(7), (8). At the hearing, the board will take under oath testimony of any person relative to the assessment; the owner or owner's representative will testify first; the board may examine under oath any person it believes has knowledge of the property's value; the board may compel attendance of witnesses and documents; the hearing shall be recorded; and the assessor shall then provide specific information to the board supporting the assessor's valuation. Sec. 70.47(8).

¶16 "In all proceedings before the board the taxation district shall be a party in interest to secure or sustain an equitable assessment of all the property in the taxation district." WIS. STAT. § 70.47(11). As noted, in this case, the "taxation district" is the City.

¶17 The board will then make a determination as to whether the assessment is correct. WIS. STAT. § 70.47(9)(a). The board shall presume that the assessor's valuation is correct, a presumption only rebutted "by a sufficient showing by the objector" that it is incorrect. Sec. 70.47(8)(i); *see also Thoma v. Village of Slinger*, 2018 WI 45, ¶19, 381 Wis. 2d 311, 912 N.W.2d 56.

¶18    If the assessment is too high or too low, the board will adjust it accordingly.   WIS. STAT. § 70.47(9)(a).   The mission of the board is not to independently estimate or reassess the objecting taxpayer's assessment, but rather to review, as a quasi-judicial body, the city assessor's valuation by considering the evidence presented and then to determine whether the assessor's valuation is correct.  *See id.*; *see also Nankin*, 245 Wis. 2d 86, ¶18.

¶19    A city's board could include the "mayor, clerk and such other officers, other than assessors," as provided by city ordinance; in villages, the president, clerk, and such other officers, other than the assessor, as determined by ordinance; and in towns, the town supervisors and clerk are on the board of review.  *See* WIS. STAT. § 70.46(1).

¶20    Although a board's membership does not usually require any special training or experience, *see* WIS. STAT. § 70.46(1); *Nankin*, 245 Wis. 2d 86, ¶31, in this case, the City specifically addresses the Board's membership and provides that the Mayor appoints one member each year with common council approval:

> (1) MEMBERS.  (Am. #18-04)  The Board of Review shall be composed of 5 residents of the City, none of whom shall occupy any public office or be publicly employed.   The Board shall consist of a realtor, attorney, owner of a commercial property and two homeowners.…
>
> (2) APPOINTMENT.   One member shall be appointed annually by the Mayor, subject to the approval of the [Common] Council, and shall hold office for 5 years until his [or her] successor is appointed and qualified.

CITY OF WAUKESHA, WIS., CODE ch. 3.03(1), (2) (Aug. 21, 2008).

¶21    As part of this overview, and before we directly examine WIS. STAT. § 70.47(13), one more item specifically referenced by the certiorari subsection must

be noted. Section 70.47(12) explains how notice of the Board's decision is provided. It states as follows:

> **(12) NOTICE OF DECISION.** Prior to final adjournment, the board of review shall provide the objector, or the appropriate party under sub. (10) [a subsection no party asserts is relevant here], notice by personal delivery or by mail, return receipt required, of the amount of the assessment as finalized by the board and an explanation of appeal rights and procedures under sub. (13) and [WIS. STAT. §§] 70.85, 74.35 and 74.37. Upon delivering or mailing the notice under this subsection, the clerk of the board of review shall prepare an affidavit specifying the date when that notice was delivered or mailed.

Sec. 70.47(12). This provision essentially provides that the board shall notify the taxpayer through reliable means of its decision, with an explanation of appellate rights and procedures. The statute requires notice to no other person. *See* ***id.***

*WISCONSIN STAT. § 70.47(13) Does Not Authorize the City to Appeal its Board's Decision*

¶22 We conclude that, after examining the language of WIS. STAT. § 70.47(13), considering the statutory scheme and purpose as a whole, and employing the other above-noted rules of statutory interpretation, § 70.47(13) is clear and did not authorize the City's certiorari appeal of its Board's determination to the circuit court.

¶23 To start, we repeat the most pertinent language of WIS. STAT. § 70.47(13): "[A]ppeal from the determination of the board of review shall be by an action for certiorari commenced within 90 days after the taxpayer receives the notice under sub. (12)." The Board emphasizes that the phrase "after the taxpayer receives notice" of the Board's determination evinces a legislative intent that such an appeal was meant only for the taxpayer. Although we do not place as much weight on this wording, standing alone, as the Board does, the Board has a point.

After all, the notice is the official document constituting the Board's decision regarding the taxpayer's objection, akin to a final judgment for purposes of an appeal to this court, *see* WIS. STAT. § 808.03(1), and the notice is being provided within the context of, and with instructions for, appealing to the circuit court.

¶24     The City argues that WIS. STAT. § 70.47(13) simply explains that an appeal of the Board's determination should be taken via a certiorari action, and it does not state that those appellate rights belong to only one party, the taxpayer. It is true that the subsection does not expressly state that "only" the taxpayer, or words to that effect, may take an appeal. However, the statute does identify only one party—the taxpayer.

¶25     Further bolstering the Board's argument is the reference to WIS. STAT. § 70.47(12). Subsection (12) states that (1) the taxpayer is the *only* person or entity to receive notice of the Board's decision, (2) the taxpayer is contemporaneously provided with an explanation of appellate rights and procedures, and (3) receipt by the taxpayer of the Board's determination and its date is of such import that the notice must either be personally delivered or mailed with return receipt required, and, once the notice has been given, the Board's clerk prepares an affidavit specifying that notice was given and the date thereof. Again, no other entity, including the City, is provided notice of any sort.

¶26     Moreover, the certiorari appeal provision identifies when the specific time for appeal is triggered: "90 days after the taxpayer receives notice" of the Board's determination. WIS. STAT. § 70.47(13). Countless procedural legal and, specifically, appellate rights and obligations entail and often strictly mandate exact timelines and deadlines. *See generally* WIS. STAT. chs. 808 and 809. The ninety-day requirement in the certiorari appeal provision triggers when the appellate rights

10

begin and then naturally determines the date those rights expire. So, the time that an appeal may be commenced and the time by which an appeal is time-barred turn on the date the taxpayer—and only the taxpayer—receives notice.

¶27 The City asserts that the ninety days merely sets the *time* for an appeal and does not establish the *rights* of appeal and who may take one. We agree that the time limit does not establish who may take an appeal, but, as explained above, because the taxpayer is the only person statutorily required to receive the notice and the date of that receipt sets the appeal clock ticking, it strongly suggests that the certiorari appeal provision was intended only for the benefit of an aggrieved taxpayer.

¶28 The City responds that, while not receiving official notice of the Board's determination under the statute, it is "ridiculous" that the City would somehow remain unaware of the Board's determination, noting that the assessor would have been at the proceedings and that the Board's determination would have to be reported to the City's treasurer. That may all be true. But the appeal time starts not at the Board hearing and when the City treasurer learns of it, but rather when the taxpayer receives notice.

¶29 Moreover, we are tasked here with statutory interpretation, and the statutory provisions spell out very clearly that the Board must only ensure that the taxpayer receive the Board's decision and that the appeal time begins to run upon the taxpayer's receipt. It would be uncommon, oddly random, and potentially vague for the legislature, after establishing a comprehensive statutory taxation and assessment scheme, to leave a party that allegedly has a right to appeal (e.g., the City) to learn of that right by an unspecified, unexpressed, and indirect means. For good public policy reasons, filing and deadline periods are typically express, direct,

and precise, and then strictly enforced. *Cf.*, **State v. Sorenson**, 2000 WI 43, ¶16, 234 Wis. 2d 648, 611 N.W.2d 240 ("The timely filing of a notice of appeal is necessary to give the court of appeals subject matter jurisdiction over an appeal. If a party fails to comply with the statutory requirements for filing a timely notice of appeal, the court of appeals lacks jurisdiction, and the court must dismiss the appeal as defective." (citations omitted)).

*Contrary to the City's Argument, the Legislature is not Required to Permit the City to Use the Statutory Certiorari Appeal Process*

¶30     The City argues that it is only logical to allow the City to appeal its Board's determination because a certiorari review is meant to ensure that administrative bodies use and properly apply the pertinent rules, specifically here the rule that the assessor's valuation is presumed correct. As an indication of legislative intent in favor of its point, the City emphasizes WIS. STAT. § 70.47(11), which makes the City, as the taxation district, a "party in interest." The provision reads in full: "**(11) PARTIES.** In all proceedings before the board the taxation district shall be a party in interest to secure or sustain an equitable assessment of all the property in the taxation district." *Id.* If the City is not allowed to appeal, as a party in interest, a determination by the Board that resulted from its failure to follow the standards and rules, particularly here the presumption of a correct assessment, then there will be no one to enforce the standard and rules, and there is therefore no public policy reason to bar the City's appeal. We reject the argument.

¶31     Certiorari is generally a means by which a court may examine the validity of a decision made by a municipality, an administrative agency, or an inferior tribunal. *See* **Ottman v. Town of Primrose**, 2011 WI 18, ¶34, 332 Wis. 2d 3, 796 N.W.2d 411. The City does not cite to any case law, however, holding that when the legislature undertakes to draft its own certiorari appeal process, and taking

into account an already highly evolved, comprehensive statutory scheme, it is required to follow any particular criteria or include certain conditions. Nor does it provide case law requiring, more specifically, that the legislature must confer appeal right status on any particular person or group of persons (other than to avoid drafting the statute, of course, in a way inconsistent with due process or other rights protected by the federal and state constitutions; but the City makes no constitutional argument).

¶32    The City's reference to WIS. STAT. § 70.47(11), making the City a "party in interest," is not only unavailing, this subsection works against the City's arguments. First, it is in its own separate subsection. Neither the phrase "party in interest" nor its subsec. (11) is found or cross-referenced in subsecs. (12) (the notice of the Board's determination) or (13) (the certiorari appeal). Thus, the City is *not* referred to as a "party in interest" in subsecs. (12), such that it should receive official notice of the Board's determination, or (13), such that it should be permitted to take a certiorari appeal after the taxpayer receives notice.[6] Specifying the City as a party in interest "before the board," but not on appeal, implies the City is not a "party in interest" elsewhere in this process. *Wisconsin Citizens Concerned for Cranes & Doves v. DNR*, 2004 WI 40, ¶35, 270 Wis. 2d 318, 677 N.W.2d 612 ("[W]here a statute governing one subject contains a given provision, the omission of that same provision from a statute governing a related subject is evidence that a different intention existed.").

---

[6] *See, e.g.*, WIS. STAT. § 196.74 ("[T]he commission shall give notice to the parties in interest of the filing of the complaint."); WIS. STAT. § 195.31 ("[I]t shall be the duty of the [commissioner's] office to give notice to the party or parties in interest."); WIS. STAT. § 111.07(2)(a) (the commission "shall mail a copy of such complaint to all other parties in interest"); WIS. STAT. § 59.694 (6) (the board of adjustment sets a time for the hearing of the appeal and "give[s] due notice to the parties in interest").

¶33    Finally, WIS. STAT. § 70.47(11) states why the City is a "party in interest": "to secure or sustain an equitable assessment of all the property in the taxation district." *Id.* By its plain language, this provision allows the City to attend any Board proceeding and, in the case of an assessment hearing, to ensure equitable assessments for its taxpaying public at that stage. *See id.*

¶34    As for the City's arguments that, if it is not allowed to appeal, then no one can ensure that the Board acts according to law and keeps within its jurisdiction, and no good public policy reasons exist to interpret the statute as the Board suggests, they fail to persuade. These assertions are somewhat intertwined, so we will answer them as a whole.

¶35    First, the legislature may have had good public policy reasons not to permit the City to take such an appeal. In this regard, the legislature may have set up the certiorari appeal provision for use only by the taxpayer because the City, through its appointed assessor, and its appointed Board of Review, has more than ample opportunity for input in the individual assessment process, as well as in general the appointment process. Much of this has been noted above, but we highlight a few items.

¶36    The assessment is initiated, investigated, determined and then reviewed by City-appointed individuals. In this regard, the City Mayor chooses the assessor with the approval of the common council, the assessor calculates the valuation, is available to address and discuss the adjustment with the taxpayer, and then he or she explains and defends it at the Board hearing. *See* CITY OF WAUKESHA, WIS., CODE ch. 3.03(1), (2); WIS. STAT. § 70.47.

¶37    The City Mayor also selects each of the five Board members (one per year) with approval of the common council. *See* CITY OF WAUKESHA, WIS., CODE

ch. 3.03(1), (2). The City also chose the desired backgrounds of each member: two homeowners, a realtor, an attorney, and a commercial property owner. *See id.* The statute permits a board of review to be made up of mayors, alderpersons, supervisors, and clerks, depending on the municipality.

¶38 To object to an assessment, the taxpayer must jump through several hoops, such as filing its objection within short deadlines, providing its own estimate with supporting evidence, and presenting its case to the Board with the burden of making a "sufficient showing" that the assessment is incorrect. The Board must presume that the assessor's amount is correct.

¶39 The foregoing factors plainly reveal a rational basis to disallow the City from taking a certiorari appeal of a decision made by the Board it selects, funds, and provides information to in considering the recommended assessment of the City's appointed assessor. In short, the City has input through its appointed assessor (whose work enjoys a presumption of correctness), and in appointing the members of the Board. To provide it with yet another avenue for input would be at the direct expense of taxpayers, who would then be burdened with the litigation costs of an appeal they do not seek, not to mention the unwanted delay and uncertainty. Ultimately, it would undermine the streamlined process set forth in the statute that allows taxpayers to challenge unfavorable assessments in a cost-effective and efficient manner.

¶40 Moreover, had the legislature intended to allow the City to take a certiorari appeal here, it could have said so. It clearly knows how, as it has done so in other statutory schemes. In this regard, the legislature has granted certiorari appeal rights in zoning cases to "[a]ny person or persons, jointly or severally aggrieved by any decision of the board of appeals, or any taxpayer, or any officer,

department, board or bureau of the municipality." WIS. STAT. § 62.23(7)(e)10. Likewise, with regard to reviews of municipal administrative decisions, "[a]ny party to a proceeding resulting in a final determination may seek review thereof by certiorari within 30 days of receipt of the final determination." WIS. STAT. § 68.13(1). The point is that the legislature, had it intended to permit the City the right to certiorari review here, could have done so as it has in other statutory schemes, by expanding the language or otherwise specifying those parties who are authorized to take an appeal.[7]

¶41 Lastly, we also generally note that, upon reviewing the statutory scheme, the case law[8] and a specific guidance document prepared by the Wisconsin

---

[7] If the City wants the right to appeal from the Board's decision, the proper route to seek creation of such a right is through the legislature. *See State v. Pocian*, 2012 WI App 58, ¶12, 341 Wis. 2d 380, 814 N.W.2d 894; *Meriter Hosp., Inc. v. Dane Cnty.*, 2004 WI 145, ¶35, 277 Wis. 2d 1, 689 N.W.2d 627 (If a statute fails to cover a particular situation, and the omission should be cured, the remedy lies with the legislature, not the courts.).

[8] As but one example, the supreme court discussed the statutory avenues available to the taxpayer as follows:

> Chapter 70 of the Wisconsin Statutes establishes a comprehensive procedure by which property owners may challenge the valuation or the amount of property assessed for taxation….

Department of Revenue, we have only seen discussions of the certiorari appeal within the context of the taxpayer invoking it.[9]  *See generally* WISCONSIN DEPARTMENT OF REVENUE, PROPERTY ASSESSMENT APPEAL GUIDE FOR WISCONSIN REAL PROPERTY OWNERS (2020).  The Department of Revenue has general supervisory authority over the administration of the assessment and tax laws of the state, over assessors, and boards of review in the performance of their duties.  WIS. STAT. § 73.03.  This is not by itself conclusive evidence that only a taxpayer

---

> The statutory scheme of [WIS. STAT.] chs. 70 and 74 also provides a detailed method *for taxpayers to appeal a decision of the board of review*.  A property owner who files an objection with the board of review under [WIS. STAT.] § 70.47(7) and who disagrees with the board's determination has three options for appeal.  The *property owner may appeal* the determination of the board by an action for certiorari.  *See* [WIS. STAT.] § 70.47(13).  In addition, the *property owner may file a written complaint with the department of revenue* requesting that the department revalue the property and adjust the assessment thereof.  *See* [WIS. STAT.] § 70.85.  In the alternative, the *property owner may file a claim against the taxation district* for an excessive assessment to recover any amount of property tax imposed as a result of the excessive assessment.  *See* [WIS. STAT.] § 74.37(2)(a).

*Hermann v. Town of Delavan*, 215 Wis. 2d 370, 379-80, 572 N.W.2d 855 (1998) (emphasis added; footnotes omitted).  Both parties acknowledge that there is no published decision in which a municipality appealed its Board of Review's determination.  Neither party addresses how an appeal by a municipality under WIS. STAT. § 70.47(13), would square with the other avenues for a taxpayer to challenge the Board of Review's determination, namely, a taxpayer complaint with the department of review or a taxpayer claim in circuit court against the taxation district.  *See* §§ 70.85, 74.37.

[9]  "You [the taxpayer] must file an appeal with the circuit court within 90 days after receipt of the determination notice (decision) from" the Board.  WISCONSIN DEPARTMENT OF REVENUE, PROPERTY ASSESSMENT APPEAL GUIDE FOR WISCONSIN REAL PROPERTY OWNERS 12 (2020).  "The following are the references to the appeals procedures contained in state law….  State law ([WIS. STAT. §] 70.47(13))—(Certiorari) provides for the property owner to appeal the [Board's] decision to the circuit court."  WISCONSIN DEPARTMENT OF REVENUE, PROPERTY ASSESSMENT APPEAL GUIDE FOR WISCONSIN REAL PROPERTY OWNERS at 17.

may appeal, but it adds to the already countless factors weighing in favor of arriving at that conclusion.[10]

¶42     For these reasons, we conclude the language of the statute is clear, and reverse the circuit court's denial of the Board's motions and remand to the circuit court with directions to quash the writ and dismiss the City's certiorari action.

*By the Court.*—Order reversed and cause remanded with directions.

---

[10] To be clear, we do not consider the statute ambiguous. Nonetheless, to the extent the manual is considered extrinsic evidence available for review if the statute is considered ambiguous, it only bolsters our conclusion that appeal rights on the part of the City were not intended.